UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                          :
KOJI SASAYA,                              :        CASE NO. 1:11-CV-00628
                                          :
            Plaintiff,                    :
                                          :
     v.                                   :        OPINION AND ORDER
                                          :        [Resolving Doc. No. 4, 5, 21, 27]
JAMES EARLE, et al.                       :
                                          :
            Defendants.                   :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        In this legal malpractice case, Plaintiff Koji Sasaya proceeds *pro se* against the counsel he

retained to challenge the resolution of a bitter business dispute, which Sasaya settled through his

former counsel but now regrets.  Defendants James C. Earle and McGuireWoods LLP counterclaim,

seeking the balance of unpaid fees for their thankless remedial representation.

        Though Sasaya's removed complaint slipped through a brief window in time between a

permanent injunction restricting his filings in this District and a state court Order declaring him a

vexatious litigator, his allegations are misdirected and frivolous, he has identified no expert to

demonstrate breach of a duty of care, and he cannot prove legal malpractice.  For the following

reasons, the Court **DENIES** the Defendants' Motion to Dismiss   [Doc. 4], **GRANTS** the

Defendants' Motion for Summary Judgment.   [Doc. 21], and **GRANTS** the Defendants'

Counterclaim for fees.  [Doc. 15.]

Case No. 1:11-CV-00628
Gwin, J.

**I.**

This is just one of many lawsuits Plaintiff Sasaya has filed after the end of a dispute over the sale of a joint manufacturing venture where Sasaya was a minority investor. Feeling bilked by his share of proceeds from the sale, Sasaya fought his joint venturer in Japanese and American courts, finally arriving at a settlement agreement during mediation from which he later sought, unsuccessfully, to escape. *A&H Management Services, Inc. v. Chafflose Corp.*, No. 1:07-cv-01321 (N.D. Ohio May 7, 2007) (the "underlying case").[1]

The Plaintiff's enduring dissatisfaction has targeted a rapidly expanding set of defendants. From the Northeast Ohio Correctional Center, where he was incarcerated for his continuing refusal to comply with the terms of his settlement agreement, Sasaya waged a *pro se* litigation campaign against nearly every party associated with the underlying case, regardless how tangential their involvement. Though discussed elsewhere by the many judges upon whose attention this controversy has been forced, it remains necessary to recount relevant aspects of the underlying dispute before considering whether Sasaya's claim may proceed.

A.  The Underlying Case

This litigious saga began in 1993 when Sasaya, through his companies, became the minority partner in a joint venture to manufacture and distribute cellulose sponges. The sponge concern was sold in 2006 to 3M Company, and Sasaya brought suit in Japan against his majority partner, A&H Management Services, Inc., saying that he had not been adequately compensated by the sale, and that the sale itself was improper under the terms of the joint venture agreement. [UC Doc. 7 at 4.] A&H,

---

[1]  Citations to the electronic docket of the underlying case are indicated by the prefix "UC." For a more detailed statement of the specific business entities involved, see UC Doc. 135, at 1.

-2-

Case No. 1:11-CV-00628
Gwin, J.

in turn, filed suit against Sasaya's company Chafflose Corporation in the Northern District of Ohio

to enforce an arbitration clause in the joint venture agreement. [UC Doc. 1 at 2.]  The parties

subsequently agreed to mediate the dispute, and at the close of a two-day mediation agreed through

their attorneys on the terms of a complete settlement.  A&H would pay Sasaya's company $800,000,

the parties would execute mutual releases and dismiss the arbitration, and Sasaya would dismiss both

the Japanese lawsuit and the lawsuit in the Northern District of Ohio.  [UC Doc. 39 at 3.]

The Defendant Attorneys were not involved with any of the foregoing.  Defendant Earle did

not represent Sasaya or his companies in the mediated settlement of the underlying case, which

concluded on August 21, 2007.  Instead, Thomas Lee of Taft, Stettinius & Hollister, LLP,

represented Sasaya and his enterprises.  Lee, following mediation, reduced the agreed terms to a

written settlement agreement with counsel for A&H.  [UC Doc. 39, at 5.]  A&H executed the final

agreement on September 14, 2007, but Sasaya refused to sign it and failed to dismiss the pending

lawsuits–instead, he commenced another Japanese action.  [UC Doc. 135.]

At this point the relationship between Sasaya and Lee disintegrated.  Lee moved for

extensions of time to file responses, alluding to client difficulties, [UC Doc. 15], and moved, with

his co-counsel and the Taft law firm, to withdraw from the representation. [UC Doc. 18.] The motion

was granted marginally on February 4, 2008.

Only then did Defendant Earle enter the picture.  Sasaya retained Defendant Earle to

challenge the settlement agreement,[2] and on February 26, 2008, Earle entered an appearance for

Sasaya and opposed A&H's motion to compel specific performance of the settlement agreement.

---

[2] According to Sasaya, Earle and McGuireWoods were engaged on or about February 11, 2008.
[Doc. 1-2 at 8.]

Case No. 1:11-CV-00628
Gwin, J.

In arguing that no settlement had been reached, Earle and Sasaya argued that Thomas Lee did not have the authority to agree to the settlement terms. [UC Doc. 23; UC Doc. 24.]

Following an evidentiary hearing on May 21, 2008, the district court determined that Thomas Lee had full authority to enter into the settlement agreement on Sasaya's behalf. Having "examined the facts of this case thoroughly," including submissions from both parties and the testimony of Thomas Lee, District Judge Nugent found that a settlement had been reached and memorialized by counsel, but "[a]t some point after the mediation, Mr. Sasaya apparently changed his mind and decided that the settlement was no longer acceptable." [UC Doc. 39, at 5.]    Judge Nugent ordered Sasaya to comply with the terms of the settlement agreement. [UC Doc. 39, at 3.]

Defendant Earle gamely appealed Judge Nugent's order.  [UC Doc. 42.] During the appeal, the underlying case was stayed.  Despite Defendant Earle's able challenge to Thomas Lee's apparent authority to enter into a binding settlement agreement, the Sixth Circuit affirmed the finding that Sasaya had authorized the settlement and held that "[t]he record in this case fully supports the district court's holding that an oral settlement agreement was reached between the parties," and Thomas Lee "had apparent authority to bind [Sasaya's company] to the agreement." *A&H Mgmt. Servs., Inc. v. Chafflose Corp.*, No. 08-3809, 2009 WL 232987 (6th Cir. Feb. 3, 2009) (affirming order to compel performance of settlement agreement).

Despite the Sixth Circuit's ruling, Sasaya's noncompliance continued unabated.  He refused to execute the settlement agreement.  He refused to dismiss the Japanese action.  A&H sought contempt sanctions for Sasaya's continuing refusal to comply with the terms of the settlement agreement. [UC Doc. 47.] Defendant Earle continued to act for Sasaya, turning the tables and seeking an order to show cause why A&H should not be held in contempt for failure to pay the

-4-

Case No. 1:11-CV-00628
Gwin, J.

$800,000 due to Sasaya's company under the settlement agreement. [UC Doc. 48.] That attorney-client relationship soon went the way of Thomas Lee's, however, and having obtained consent from Sasaya and his companies, Defendant Earle and his law firm soon moved to withdraw as counsel, [UC Doc. 63], offering to provide reasons for withdrawal to the district court *in camera*. [UC Doc. 66.] In the interim, Defendant Earle continued to respond to motions and represented Sasaya and his companies at a contempt hearing concerning his noncompliance with Judge Nugent's order.

On April 30, 2010, following the contempt hearing, Judge Nugent found Sasaya in contempt and ordering Sasaya incarcerated until he complied with the terms of the settlement agreement–specifically executing full releases and dismissing the Japanese actions. His companies were ordered to reimburse A&H for legal fees in the Northern District of Ohio and Japanese litigations out of the $800,000 settlement amount, and the order imposed a daily fine of $10,000 until the terms of the settlement were satisfied. [UC Doc. 80.]

At this point, Sasaya struck out on his own. On April 30, 2010, the same day he was ordered incarcerated, he filed his first *pro se* pleading, a "declaration" opposing the district court's contempt order with exhibits spanning the better part of the alphabet. [UC Doc. 81.] A month later he filed an appeal (also *pro se*) seeking review of the contempt order, [UC Doc. 85], and continued to file motions in the district court seeking various documents and information related to the underlying dispute over the sale of the joint venture. On August 26, 2010, the Sixth Circuit upheld the sanctions order and rejected Sasaya's attempts to relitigate the underlying settlement agreement. *A & H Mgmt. Servs., Inc. v. Chafflose Corp.*, No. 10-3661 (6th Cir. Aug. 26, 2010); [UC Doc. 108].

Defendant Earle and McGuireWoods did not represent Sasaya in his challenge to the contempt order, nor with respect to Sasaya's pleadings that would soon earn him restricted filer

Case No. 1:11-CV-00628
Gwin, J.

status.[3]   Sasaya moved to proceed *pro se*, [UC Doc. 87], was granted leave, [UC Doc. 91], and the

stream of filings continued to flow from Sasaya's cell.  By October, A&H lost any remaining

patience with Sasaya's untiring challenges to the twice-affirmed settlement and moved for a

permanent injunction (1) requiring Sasaya to seek leave to file any document in the Northern District

of Ohio, and (2) directing the Clerk of Court to reject any filings from Sasaya that failed to

demonstrate cause for a valid claim. [UC Doc. 118.]  Judge Nugent granted the motion by marginal

order, [Doc. 120], and after receiving Sasaya's inevitable challenge on appeal, [Doc. 122], the Sixth

Circuit affirmed Sasaya's third challenge to decisions in his case, upholding the injunction's pre-

filing restrictions.  *A & H Mgmt. Servs., Inc. v. Chafflose Corp.*, No. 10-4547 (6th Cir. Nov. 7,

2011); [UC Doc. 128].

B.  Sasaya's Malpractice Lawsuit

The instant lawsuit began on February 17, 2011, when Sasaya filed nearly two hundred pages

in the Cuyahoga County Court of Common Pleas purporting to allege legal malpractice on the part

of Defendant Earle and his firm, but principally attacking the merits disposition of the underlying

case. [Doc. 1-2.] Sasaya had already been barred from further filing in the Northern District of Ohio,

but was not yet declared a vexatious litigator under Ohio law and barred from filing in Ohio state

courts, a distinction he would not earn until August 2, 2011. [Doc. 21-7.]

The Defendants removed this case on March 28, 2011, [Doc. 1] and the Plaintiff moved to

remand to state court shortly thereafter. [Doc. 5.]  On October 21, 2011, the Defendants filed an

answer and counterclaim, saying that Sasaya and his companies had failed to pay any legal fees for

legal services provided in the underlying case. [Doc. 15.]  Though the Plaintiff has filed documents

---

[3]        The news of Sasaya's appeal from the contempt order came as a surprise to the Defendants, to
whom Sasaya had previously indicated that he did not wish to file an appeal. [UC Doc. 87-1.]

Case No. 1:11-CV-00628
Gwin, J.

styled discovery requests, they  pertain to the merits of the underlying case and not to his legal

malpractice claim. [Doc. 19; 20.]  The Defendants' Motion to Dismiss [Doc. 4-1] is unopposed, and

Sasaya opposes the Defendants' Motion for Summary Judgment [Doc. 21-1] by attacking, once

again, the underlying settlement agreement and proceedings before Judge Nugent, and saying that

he has been victimized through violations of tax treaties, the rules of evidence, fraudulent

documents, lies, embezzlement, and the like. [Doc. 27.][4]

## C.  Sasaya's Release And Outstanding Attorneys' Fees

Sasaya's exertions have incurred–and caused the incursion by others of–substantial legal fees.

Some have been resolved as a result of the final orders entered in the underlying case. On January

4, 2012, having been informed that the Japanese actions had been dismissed–by the Japanese courts,

not through any compliance on Sasaya's part–Judge Nugent entered an Order adopting the provisions

of the underlying settlement agreement and releasing Sasaya from incarceration. [UC Doc. 125.]

With respect to Sasaya's as-yet-unpaid attorney fees, the settlement entry order directed A&H to

deposit the $800,000 settlement amount into Taft Stettinius & Hollister LLP's IOLTA account, less

$352,350.10 for A&H's attorneys' fees, and less  $285,902.87 for services rendered Sasaya and his

companies by Thomas Lee.  [*Id.* at 5.] Remaining amounts were to be deposited with the Clerk of

the U.S. District Court in partial payment of fines assessed in Judge Nugent's earlier contempt order.

[*Id.* at 6.]

In disposing of the settlement proceeds, Judge Nugent did not address any amount due

---

[4]   Sasaya purports to seek relief from judgment pursuant to Fed. R. Civ. P. 60(b), but there has been
no judgment in this case.  The judgment from which he seeks relief, tellingly, is the order enforcing
the settlement agreement in the underlying case.  This has been upheld on appeal and is *res
judicata*. The Court therefore construes Sasaya's Motion as a Response to the Defendants' Motion
for Summary Judgment.

Case No. 1:11-CV-00628
Gwin, J.

McGuireWoods LLP for Mr. Earle's representation.  By separate order, Judge Nugent denied

McGuireWoods' motion to enforce an attorney lien, noting the pendency of the instant malpractice

case and stating that "the amount of fees owed to McGuireWoods, if any" would be determined by

this Court. [Doc. 136 at 1.]

## II.

To establish a cause of action for legal malpractice under Ohio law, "a plaintiff must show

(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty

or obligation and that the attorney failed to conform to the standard required by law, and (3) that

there is a causal connection between the conduct complained of and the resulting damage or loss."

*Vahila v. Hall*, 674 N.E.2d 1164 (Ohio 1997) (syllabus).  "The plaintiff's failure to prove any one

of these elements entitles the defendant-attorney to summary judgment."  *Simmons v. Rauser &*

*Assoc., L.P.A.*, No. 96386, 2011 WL 3925624, at *2 (Ohio App. Sept. 8, 2011).

To recover unpaid fees under the equitable doctrine of *quantum meruit*, a claimant must

establish that "(1) valuable services were rendered or materials furnished, (2) for the person sought

to be charged, (3) which services and materials were accepted by the person sought to be charged,

used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to

be charged that the plaintiff, in performing such services was expecting to be paid by the person

sought to be charged." *Sonkin & Melona v. Zaransky*, 614 N.E.2d 807, 811 (Ohio App. 1992).

Summary judgment must be granted "if the movant shows that there is no genuine issue as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In evaluating a motion for summary judgment,

> [t]he burden is generally on the moving party to show that no genuine issue of
> material fact exists, but that burden may be discharged by "showing—that is,

-8-

Case No. 1:11-CV-00628
Gwin, J.

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373–374 (6th Cir.2009). Once a moving party properly supports its motion for summary judgment, the nonmoving party must set forth specific facts showing that a genuine issue remains for trial. *Celotex,* 477 U.S. at 323.

**III**.

A.  Sasaya's Motion to Remand to State Court

Sasaya includes removal in his expanding roster of frauds, but the defendants had every right to remove this case to federal court.  The parties are completely diverse.  The plaintiff was an (incarcerated) resident of Ohio at the time of filing.  *See Briscoe v. Price-Coomer Relocation, Inc.*, No. 07-433, 2008 WL 3914986, at 1 (E.D. Ky. August 21, 2008) ("subject matter jurisdiction is determined at the time of removal."). Defendant Earle is a resident of California and appeared *pro hac vice* for Mr. Sasaya, and McGuireWoods LLP is a corporate citizen of Virginia, and it is uncontested that the law firm's "nerve center" is located in Virginia. *See Hertz Corp v. Friend*, 130 S.Ct. 1181 (2010). Sasaya's complaint alleges sufficient damages–$20 million–to meet the statutory requirement. [Doc. 1-2 at 10.] The case could have been filed originally in federal court, 28 U.S.C. § 1332(a), and the defendant properly removed it.  28 U.S.C. §1441(a).

After paring away unsupported noise about "bad faith," "cancerous efforts," and "malicious intentions," as well as an indiscriminate suggestion that counsel acting for Defendant Earle in this

-9-

Case No. 1:11-CV-00628
Gwin, J.

action should be referred to the Ohio Supreme Court Disciplinary Board, the essence of Sasaya's motion is that *Younger* abstention was warranted because there were litigations pending in the Ohio state trial courts. [Doc. 5 at 5.] Though indeed there were several litigations pending at the time Sasaya sought to remand, shortly before the vexatious litigator order enjoined him from continuing to prosecute them, abstention is not warranted.

In the Sixth Circuit, courts abstain from exercising jurisdiction where (1) state proceedings are pending and ongoing; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995).  By jurisdictional fiat, there is no parallel and ongoing state proceeding in this removed action, *Gruttadauria v. Fazio*, No. 1:07-CV-449, 2007 WL 1100439, at *3 (N.D. Ohio Apr. 10, 2007), for removal neatly packaged all of Sasaya's state claims against the parties named here and deposited them in this Court's docket.  Though the plaintiff alludes to state court actions in which he happens to be a party, there is no suggestion that the specific claims and parties in this case are implicated in the state court actions.  Nor is there any danger of bringing a federal bull into a china shop full of delicate and emerging state doctrines.  Ohio law on professional malpractice is well-settled and no new points are raised here. *Fid. & Guar Ins. Underwriters v. Nocero*, No. 1:01-CV-397, 2001 WL 1792448, at *10 (N.D. Ohio Dec. 13, 2001). Sasaya has identified no "important countervailing interest" at issue that would make his case sufficiently exceptional to warrant abstention. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959). Finally, Sasaya does not advance any cognizable constitutional claim that would be avoided in state court, and his claim is for money damages, not equitable relief or relief that might

Case No. 1:11-CV-00628
Gwin, J.

interfere with parallel state court proceedings.[5]  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("[W]hile we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions."); *UEI, Inc. v. Quality Fabricated Metals, Inc.*, No. 1:06-cv-122, 2006 WL 1541353, at *6-7 (W.D. Mich. June 1, 2006) ("*Younger*'s application is generally limited to actions in which the federal plaintiff is seeking declaratory and injunctive relief.").   Abstention is unwarranted; Sasaya's motion is **DENIED**.

B.  The Defendants' Motion to Dismiss

Having hailed Sasaya into federal court, however, the Defendants are stuck with him. Neither the retroactive state court order preventing Sasaya from continuing lawsuits filed in Ohio trial courts, nor Judge Nugent's injunction requiring him to seek leave before filing complaints or documents in the Northern District of Ohio, requires dismissal.

After the Defendants removed this lawsuit, Sasaya was declared a vexatious litigator under Ohio law and barred by the Ohio Court of Common Pleas from  "continuing any legal proceedings that he has instituted in any Ohio trial court prior to the entry of this order."  [Doc. 16-1.] That order was entered on August 2, 2011, and though this proceeding was filed in state court prior to the vexatious litigator order and would appear to come under its prohibition against "continuing" lawsuits, this case was also removed prior to the entry of the order.   Following removal, this Court discards state procedure for federal.   Charles A. Wright, Arthur R. Miller, Edward H. Cooper &

---

[5]     Sasaya purports to seek other relief, such as filing grievances with state disciplinary bodies, and discovery of materials beyond the scope of this lawsuit.  The former is not the Court's  role–Sasaya himself can grieve Defendant Earle, if he chooses–and the latter is not a form of relief but a procedural matter within the instant proceedings.  Neither amount to injunctive relief that, if granted, would impact state proceedings and implicate *Younger* abstention.

Case No. 1:11-CV-00628
Gwin, J.

Joan E. Steinman, 14C *Federal Practice & Procedure* §3738 (4th ed. 2009) ("[I]t has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.").  And the Court is not authorized, once it assumes jurisdiction over a removed matter, to reach back into the state system and draw forth a subsequently-entered omnibus order, even one that purports to apply retroactively. 28 U.S.C. § 1450 (following removal, "[a]ll injunctions, orders, and other proceedings had *in such action prior to its removal* shall remain in force and effect until dissolved or modified by the district court.") (emphasis added). Rather, following removal, "the federal court merely takes up where the state court left off"–in this case, before Sasaya was deemed a vexatious litigator under Ohio law. *Bruley v. Lincoln Property Co*., 140 F.R.D. 452, 453 (D. Colo. 1991).

Nor does the Nugent Injunction compel dismissal.  By removing the matter to this Court, the Defendants vitiated its restrictions.  No doubt the Defendants would prefer that the Plaintiff be deemed constructively to have filed the suit here, and at first blush that may seem a colorable interpretation of the case's posture.  "A removed action proceeds as if it had originally been brought in federal court; thus, we take the case as though everything done in the state court had been done in the federal district court."  *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005).

The mechanics of removal, however, vex any overly easy equation of "filing" in the context of state and federal procedure, leaving this Court unable to declare that Sasaya "filed" it here. Sasaya's complaint reaches the Court on the Defendants' initiative alone.  The Defendants made no effort to defend the case in state court, [Doc. 1-3], and filed a notice of removal to this Court on March 28, 2011. [Doc. 1.]  Removal is clearly the Defendants' prerogative, as discussed above, but it could just as easily be said that the Defendants, rather than Sasaya, "filed" the action in the

Case No. 1:11-CV-00628
Gwin, J.

Northern District by appending the complaint to their notice of removal.  [Doc. 1-2.] The Court will

not deem Sasaya to have violated the restrictions established by Judge Nugent's Injunction simply

because the Defendants chose to remove his complaint.  The injunction purports to prohibit Koji

Sasaya from filing documents in this District–it does not prevent Sasaya's state-court opponents

from requiring him to litigate here.

Admittedly, this appears to leave Sasaya, doubly a vexatious litigator, to have his cake and

eat it too. He dodged retroactive application of the state-court order from a convenient perch in the

docket of a federal court, only to discover that the lawsuit's state-court inception shields him from

Judge Nugent's Injunction.  He has also been prohibited from filing pleadings in federal court

without leave, [Doc. 4-3], and an argument could be made that he should have sought leave to file

all post-removal documents, but again, the unique window through which Sasaya's complaint

slipped complicates the application of his pre-filing restrictions.  The Defendants cannot hail Sasaya

to litigate here and then re-bind his hands. To the extent that Judge Nugent's injunction bars

consideration of Sasaya's complaint and other filings, the Court reluctantly disregards it.  The

Defendants' Motion to Dismiss is therefore **DENIED**.

C.  Dismissal Under 28 U.S.C.  § 1915(d)

Dismissal is warranted, however, under 28 U.S.C. § 1915(e), which provides a special rule

for dismissing cases filed *in forma pauperis* and stipulates that "the court shall dismiss the case at

any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails

to state a claim upon which relief can be granted."  Dismissal under 28 U.S.C. § 1915 may be

ordered *sua sponte.  West v. Russell*, No,. 95-3659, 1996 WL 607150 (6th Cir. Oct. 22, 1996).

Though removed, the case appears to have been filed *in forma pauperis* by Sasaya at the trial

-13-

Case No. 1:11-CV-00628
Gwin, J.

court level,[6] and  the fact of removal does not alter the appropriateness of the statute's application

here.    The provisions of 28 U.S.C. § 1915 are

> designed largely to discourage the filing of, and waste of judicial resources and
> private resources upon, baseless lawsuits that paying litigants generally do not initiate
> because of the costs of bringing suit and because the threat of sanctions for bringing
> vexatious suits under Federal Rule of Civil Procedure 11.  To this end, the statute
> accords judges not only the authority to dismiss a claim based on an indisputable
> meritless legal theory, but also the unusual power to pierce the veil of the complaint's
> factual allegations and dismiss those claims whose factual contentions are clearly
> baseless.

*Neitkze v. Williams*, 490 U.S. 319, 327 (1989).  Though the standard for frivolity is not identical to

the standards applicable to a motion to dismiss pursuant to Rule 12(b)(6), a complaint is "frivolous

when it lacks an arguable basis either in law or in fact."  *Id.* at 324.

Sasaya's complaint is devoid of any such arguable basis, and presents a clear case of

frivolous filing. Sasaya generally claims that the underlying settlement agreement was the product

of a "fraud conspiracy," but whether true or not that allegation provides no basis for a malpractice

claim against a lawyer unassociated with the settlement.  [Doc. 1-2 at 8.] Sasaya says that "the

defendant's [sic] pressured Sasaya to sign a bogus settlement agreement without any negotiation, or

due diligence," but he has the wrong lawyer–indeed, his complaint is ambivalent throughout as to

which lawyer's services he regrets.   Thomas Lee represented him throughout the mediated

settlement, and the Court notes that Sasaya did in fact unsuccessfully sue Thomas Lee for

malpractice. [Doc. 21-6 at 4.]  But Defendant Earle had no part in the making of the settlement

agreement. Thus the vast majority of Sasaya's various charges, which across the 193-page

submission allege a nefarious pact to dupe him into abandoning his rightful proceeds from the joint

---

[6]     Sasaya filed a poverty affidavit and an affidavit of indigence with his complaint.  [Doc. 1-3.]
Taking all actions from state court as though they had been filed in federal court, the only
reasonable equivalency is to deem Sasaya to have proceeded *in forma pauperis*.

Case No. 1:11-CV-00628
Gwin, J.

venture, or selling the venture "like a thief in the night" to 3M, are simply logically, legally, and factually irrelevant to the Defendants in this case. The lawsuit is an attempt to relitigate a settled and affirmed business dispute and has no arguable basis in law or fact.   The only allegations conceivably relevant to Defendant Earle say that by failing to convince Judge Nugent that the settlement agreement was "bogus," the Defendants violated canons of professional ethics and committed malpractice. [Doc. 1-2 at 9.] Sasaya says the representation was not zealous because the Defendants "had all the evidence and documentation from the fraud conspiracy," [Doc. 1-2 at 8], and "were incompetent and misrepresented Sasaya . . . [by] ramb[ling] for thirty (30) pages regarding privileged communications and mediation communications, regarding email transmissions and their admissibility." [Doc. 1-2 at 10.] The allegations lack an arguable basis in law, however, because an adverse ruling does not a malpractice claim make, and aside from making a number of merely conclusory statements, and opining that the evidentiary dispute rambled, Sasaya nowhere says how the representation failed to meet applicable professional standards.

Frivolity, for the purposes of the *in forma pauperis* statute, "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Nietzke*, 490 U.S. at 324. Consistent with Sasaya's generally indiscriminate blame-laying, the causal allegations in the complaint are fancifully made. Sasaya says that the Defendants' actions "have caused tortious injury" to him and "deprived him of his freedom," [Doc. 1-2 at 10], but Sasaya held the keys to his own prison and made his own decision to ignore Judge Nugent's order to comply with the terms of settlement agreement. Blame and causal responsibility for ensuing harms can only be laid at his cell block door.

The notion that counsel hired specifically to contest an existing settlement agreement can be held responsible for any perceived deficiencies in the settlement agreement itself—an agreement

Case No. 1:11-CV-00628
Gwin, J.

Judge Nugent found that Sasaya, through his former counsel, agreed–is not merely fanciful, but absurd.  Yet this is what Sasaya alleges, and further alleges that his remedial counsel committed malpractice, demonstrated incompetence, and evinced want of zeal by pursuing evidentiary challenges  challenges alongside his challenge to Thomas Lee's apparent authority to enter into a settlement agreement.   The allegations are fanciful; the claims misdirected and frivolous.  Accordingly, the Court **DISMISSES** Sasaya's malpractice claim with prejudice pursuant to 28 U.S.C. § 1915(e).

D.   The Defendants' Motion for Summary Judgment

        The Defendants are entitled to summary judgment on largely the same grounds.  Sasaya's complaint primarily inveighs against the representation by Thomas Lee, not by Defendant Earle.  The factual allegations of the complaint primarily concern the underlying case, not the scope of representation with which Defendant Earle was involved.  [Doc. 1-2 at 5-7.] The only allegations against Defendant Earle are conclusory and made without any specific factual allegations as to how the representation may have been lacking zeal, or may have demonstrated gross misconduct. [Doc. 1-2 at 8.] Under its most charitable construction,  Sasaya's argument is that despite having given Defendant Earle everything necessary to overturn the settlement agreement, he did not prevail.

        But failing to achieve litigation objectives is not malpractice.  If it were, at least half of the parties in all litigations reaching final judgment would have serious claims against counsel. To establish malpractice, a plaintiff must show "that the attorney failed to conform to the standard required by law."  *Vahila v. Hall*, 674 N.E.2d 1164 (Ohio 1997) (syllabus). This Sasaya provides neither legal argument nor factual allegations to support.

        Because professional standards are much more nuanced than the victory-or-malpractice

Case No. 1:11-CV-00628
Gwin, J.

paradigm from which Sasaya's complaint issues, Ohio law requires that in all but extraordinary cases, a claim for malpractice requires expert testimony to establish failure to conform to the appropriate professional standards.  Expert testimony is required to make out a claim for malpractice unless the malpractice is so obvious as to be cognizable by a lay jury. *McGinnis v. Hyatt Legal Clinic*, 461 N.E.2d 1295, 1297 (Ohio 1984).  This is certainly not such a case.  Sasaya gives little indication as to how the representation amounted to malpractice, aside from producing an unsuccessful result, and a review of the pleadings filed on Sasaya's behalf reveals what appears to be competent and vigorous representation, whether by lay or professional standards.

Though Defendant Earle has filed an affidavit saying that his representation was competent and met the relevant standards of care, [Doc. 21-3], he need not have.  The moving party is not required to provide any evidence negating the opponent's claim, and need not even provide affidavits supporting its motion where an element of a claim is simply factually unsupported. *Celotex*, 477 U.S. at 323-24.  The moving party can discharge its burden at summary judgment by "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  This, by highlighting the absence of the expert testimony required to make out a claim for professional malpractice, the Defendants have done. "The plaintiff's failure to prove any one of these elements entitles the defendant-attorney to summary judgment." *Simmons v. Rauser & Assoc., L.P.A.*, No. 96386, 2011 WL 3925624, at *2 (Ohio App. Sept. 8, 2011).  Thus, to the extent that Sasaya's allegations can be charitably understood to make out a malpractice claim against Defendant Earle, it fails because Sasaya cannot establish the second element of legal malpractice under Ohio law. *Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons & Bibbo*, No. 01AP-1137, 2003 WL 1699841, at *7 (Ohio App. Mar. 21, 2003) ("Expert testimony is normally

-17-

Case No. 1:11-CV-00628
Gwin, J.

necessary to establish . . . that the attorney accused of malpractice has failed to conform with the standard required by law").

Moreover, with the filing of Defendant Earle's affidavit,[7] the burden shifted to Sasaya under Rule 56(e), which  "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324.  Sasaya has entirely failed to do so.  Beyond merely "fail[ing] to properly address another party's assertion of fact," Fed. R. Civ. P. 56(e), Sasaya's response to the Motion for Summary Judgment does not in any way challenge the Defendants' expert opinion that the burden of care was met.[8]

Consequently, Sasaya's claim cannot survive summary judgment. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Sasaya has had ample time for discovery, which is now closed, and has pled many facts, the balance of which are irrelevant and all of which, without expert testimony, are insufficient as a matter of law to establish an essential element of his malpractice claim. The

---

[7]     "A defendant in a legal malpractice action may testify as to whether he or she met the applicable standard of care, and independent expert testimony on that issue is therefore not required." *Vahdati'bana v. Scott R. Roberts & Associates Co., L.P.A.*, No. 07AP-581, 2008 WL 713936, at *7 (Ohio App. 10th Dist. 2008).

[8]     Sasaya's opposition challenges Judge Nugent's contempt order as somehow violative of a tax treaty between the United States and Japan, and complains that discovery is needed to show how the contempt order in the underlying case violated international law.  The only accusation not barred by *res judicata* and relevant to Defendant Earle's representation is that Earle "could not find conspiracy" between Thomas Lee and counsel for A&H in the underlying case.  Again, this merely takes issue with the result and not the advocacy, nor does it revive any factual dispute as to any alleged failure to meet the attorney's duty of care.

Case No. 1:11-CV-00628
Gwin, J.

Defendants' Motion for Summary Judgment is therefore **GRANTED**.[9]

E.  McGuireWoods, LLP's Counterclaim for Fees

Defendant McGuireWoods seeks to enforce a fee agreement with Sasaya, executed on March 31, 2010, for legal services and costs incurred in connection with the contempt proceedings in the underlying case. [Doc. 15 at 5.] According to an accounting statement dated October 18, 2011, reflecting invoices issued between May 2008 and November 2010, the total amount due under the Fee Agreement is $375,672.49. [Doc. 15-1.] McGuireWoods seeks pre- and post-judgment interest, attorney's fees incurred in collecting the debt, and the cost of the instant action.  [Doc. 15 at 6.]

The Defendants have not appended the Fee Agreement to any pleadings in this case, nor have any affidavits or declarations been submitted detailing the nature of completed work, but the record of the underlying case reveals extensive motion practice that are consistent with the billing statement, and attempts to enforce an attorney lien for the same amount for the same services rendered. [UC Doc.  133.]

Defendant McGuireWoods cannot prevail here on its claim for breach of contract.  The Defendants have alleged that the Fee Agreement contemplated hourly billing and Sasaya's payment of costs and expenses, [Doc. 15 at 5], but have not submitted the Fee Agreement, or any affidavit indicating what fees were assessed for services, and that such services were reasonable.  Indeed, given the claims advanced in the instant lawsuit, McGuireWoods may be required to introduce expert testimony that its fees were reasonable to prevail on its claims for breach of contract, as it

---

[9]      Defendant McGuireWoods correctly notes that under Ohio law, a law firm does not practice law, and malpractice claims against it are not cognizable under a theory of vicarious liability without liability on the part of one of its attorneys. *Nat'l Union Fire Ins. Co. v. Wuerth*, 913 N.E.2d 939 (Ohio 2009).  The claims here are frivolous and Defendant Earle is entitled to summary judgment. Accordingly, Sasaya's claims as to Defendant McGuireWoods are **DISMISSED** with prejudice.

Case No. 1:11-CV-00628
Gwin, J.

bears the burden of establishing reasonableness, and expert testimony is required where the client

expresses dissatisfaction with the adequacy of legal services rendered. *Stafford & Assocs. v. Skinner*,

*No. 68597, 1996 WL 631112, at *6 (Ohio App. Oct. 31, 1996)* ("[I]f the client expresses

dissatisfaction with her attorney's services or the amount of money owed, expert testimony is

required to establish the reasonableness of the fees.").

        This is a case, however, where equitable relief under quantum meruit, or unjust enrichment,

is amply warranted. "Unjust enrichment is an equitable doctrine and infers, at law, a promise to pay

the reasonable value of services rendered where one party confers a benefit upon another without

receiving just compensation for those services." *J. Lewis Madorsky Co., L.P.A. v. Nolan*, 992 F.

*Supp. 945, 949 (N. D. Ohio 1998)* (awarding summary judgment for nonpayment of legal fees where

nonpaying defendant failed to give evidence to contradict claims for unpaid legal expenses).  Sasaya

has been unjustly benefitted by receiving extensive legal services for which he has not, except in

trifling part,[10] paid.

        The absence of the Fee Agreement and billing details from the record of the instant

proceedings does not pose the same obstacle to Defendant McGuireWoods' equitable claim.

Quantum meruit "is a doctrine derived from the natural law of equity, the basic concept of which is

that no one should be unjustly enriched who benefits from the services of another.  In order to

prevent such an unjust enrichment, the law implied a promise to pay a reasonable amount for the

services rendered . . . in the absence of a specific contract." *Sonkin & Melona v. Saransky*, 614 N.E.

*2d 807, 811 (Ohio App. 1992)*.  No contract; no problem.  To prevail on its claim in quantum meruit,

Defendant McGuireWoods need establish only that it rendered valuable legal services to Sasaya,

---

[10]        The Defendants' accounting statement indicates that Sasaya made partial payment on the first
invoice.  [Doc. 15-1.]

Case No. 1:11-CV-00628
Gwin, J.

which services were accepted and used, and under circumstances that reasonably notified Sasaya that payment was expected. *Id*.

Sufficient evidence demonstrates that Sasaya incurred the legal bills reflected in the accounting statement in satisfaction of each element of unjust enrichment. That legal services were rendered to Sasaya is irrefutable. The docket of the underlying case is full, and correspondence attached in Sasaya's own Complaint documents notice to Sasaya as successive filings were completed. Indeed, Sasaya's legal malpractice claim depends on the existence of an attorney-client relationship with Defendant Earle and the creation thereby of professional duties and responsibilities. The billing statement, [Doc. 15-1], reflects fees consistent in magnitude with periods of heightened activity in the underlying case. The largest invoice is dated June 6, 2008, for example, for the period covering the hearing on the settlement agreement in the underlying case, [UC Doc. 29], and larger invoice amounts reflect the appeal of the disposition to the Sixth Circuit in the following months.

Sasaya accepted and used the legal services, up to the point at which the relationship deteriorated. [Doc. 1-2 at 22, 25.] And Sasaya neither disputes the existence of an agreement for legal services–indeed, Sasaya alleges in his Complaint that he "engaged the services of James C. Earle and the firm McGuireWoods, LLP in or about approximately February 11, 2008,"– nor contests the figure reflected in the accounting statement. Indeed, correspondence between Sasaya and McGuireWoods during Sasaya's incarceration, [Doc. 1-2 at 22], substantially supports the scope of representation indicated in Earle's affidavit. [Doc. 21-3.]

Finally, there is no doubt that Sasaya understood that McGuireWoods was not a charitable operation. Not only did Sasaya receive regular invoices, [Doc. 15-1], he made a payment of $4,919.16 on the first invoice, dated May 20, 2008. And Sasaya had worked with sizeable law firms

Case No. 1:11-CV-00628
Gwin, J.

before and understood full well how representation was provided in business disputes–the docket

of the underlying case contains the fee agreement with Thomas Lee's firm, which is both typical for

these actions and not dissonant with the Defendants' allegations that the Fee Agreement at issue here

contemplated hourly billing and Sasaya's payment of costs and expenses. [Doc. 15 at 5.] It would

defy reason to think that Sasaya can have forgotten in the weeks it took him to replace his former

counsel that legal services by commercial law firms are not rendered *gratuit*.

Defendant McGuireWoods has presented sufficient evidence to satisfy every element of its

counterclaim for unjust enrichment.  As this evidence is uncontroverted, summary judgment is

appropriate. *Madorsky*, 992 F. Supp. at 950.  Though the Court is placed in the uncomfortable

position of granting recovery in equity based on an accounting statement filed in connection with a

counterclaim, Sasaya has chosen not to contest the dollar amounts reflected in the accounting

statement, and there is no good reason to disbelieve it.  Accordingly, the Court **GRANTS** the

Defendants' counterclaim, and directs Defendant McGuireWoods to file appropriate documents

indicating the costs incurred in enforcing its legal dues by February 25, 2012.

## IV.

The many lawsuits of Koji Sasaya, and the smattering of professional misconduct complaints

submitted to disciplinary tribunals in Japan, have continued unabated for over four years and have

exhausted both the conceivable range of defendants and the patience of courts–Japanese and

American; state and federal.

After years of doing this work (after dealing with this case, perhaps too many years), this

Judge observes that litigation is fickle.  Invariably and against a backdrop where both sides honestly

believe in the justness of their respective–and contrary–positions, one party (or sometimes both) are

Case No. 1:11-CV-00628
Gwin, J.

unhappy with the final result.  Courts bring resolution to disputes.  Courts are not Solomon, and cannot bring decisions that make everyone happy.

With the underlying case finally put to rest by entry of the settlement agreement as a court order and Sasaya's release from incarceration, the Court hopes that the series of redundant lawsuits has reached its end.  Through his indefatigable efforts, Sasaya has received far more judicial process than was his due; through his stubbornness he was lodged as a ward of the state at the state's expense.  Even liquidating the proceeds of his settlement agreement will not recapture the costs he has imposed on others through largely meritless and indulgent attempts to vindicate his dissatisfaction with a dispute thrice affirmed.  The stream of Sasaya's attempts to relitigate the joint venture dispute must someday cease, and with this unusually postured action it may thankfully have run dry.

The Court **DENIES** Sasaya's motion to remand, **DENIES** the Defendants' motion to dismiss, **GRANTS** the Defendants' motion for summary judgment, and **GRANTS** the Defendants' Counterclaim.

**IT IS SO ORDERED**.


Dated: February 1, 2012                          _s/       James S. Gwin_____
                                                                    JAMES S. GWIN
                                                                    UNITED STATES DISTRICT JUDGE